# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| **IGOR GORKOV,** individually and on behalf of all others similarly situated, | ) ) ) |
| **Plaintiff,** | ) No. ) ) |
| v. | ) ) JURY DEMANDED |
| **AUTOHAUS ON EDENS, LLC,** **MICHAEL ROSENGARDEN** and **MARK TAMES,** | ) ) ) ) |
| **Defendants.** | ) |

## CLASS AND COLLECTIVE ACTION COMPLAINT

NOW COMES the Plaintiff Igor Gorkov ("Gorkov"), individually, and on behalf of other employees similarly situated, pursuant to 29 U.S.C. § 201 *et seq.*, commonly known as the Fair Labor Standards Act ("FLSA"); and 820 ILCS § 115/1 *et seq.*, commonly known as the Illinois Wage Payment and Collection Act ("IWPCA"), and complains against Defendants, Autohaus on Edens, LLC ("Autohaus"), Michael Rosengarden ("Rosengarden") and Mark Tames ("Tames"), and in support states as follows:

## NATURE OF ACTION

1. This action seeks redress for Defendants' willful violations of state and federal wage and hour laws to Plaintiff and other similarly situated employees. Plaintiff brings this action against Defendant to recover unpaid wages, interest, statutory penalties, liquidated damages, and attorney's fees and costs owed to him and other similarly situated current and former employees. Plaintiff also brings this action to obtain declaratory and injunctive relief as well as all other relief that the Court deems appropriate.

2. Defendants' unlawful compensation practices have, and have had, the effect of denying Gorkov and other similarly situated employees their earned wages.

3. Gorkov's FLSA collective action consent form is attached hereto as Exhibit A.

## JURISDICTION AND VENUE

4. The Court has jurisdiction over this case pursuant to 29 U.S.C. § 216(b) (FLSA) and 28 U.S.C. § 1331 (federal question).

5. The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 29 U.S.C. § 1367 because they are so related to Plaintiff's claim within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

6. Venue is properly placed in the Northern District of Illinois, Eastern Division, through 28 U.S.C. § 1391(b), because a substantial part of the facts, events, or omissions giving rise to Plaintiff's claims occurred in this judicial district.

## PARTIES
### Plaintiff

7. Gorkov resides and is domiciled in Lake County, Illinois, which is in this judicial district.

8. Gorkov was employed by Autohaus as an employee from in or about March 1999 to May 2016.

9. During the course of his employment, Plaintiff handled goods that move, or that are intended to move, in interstate commerce.

10. Gorkov is an "employee" as defined by the FLSA, 29 U.S.C. § 203(e), and the IWPCA, 820 ILCS § 115/2.

### Defendants

11. Defendant, Autohaus on Edens, LLC, ["Autohaus"], an Illinois limited liability company, is an automotive dealership that sells and services Mercedes-Benz automobiles. Autohaus operates in the state of Illinois and does business in Cook County, Illinois at 1600 Frontage Rd, Northbrook, IL 60062.

12. Defendant, Rosengarden, is an owner, officer, employee, and/or agent of Autohaus.

13. Defendant, Mark Tames is the general manager of Autohaus, who was knowledgeable about and responsible for compliance with applicable wage laws.

14. Defendant Autohaus is an entity doing business within this judicial district and is an "enterprise" as defined by the FLSA, 29 U.S.C § 203(r)(1), engaged in commerce with the meaning of 29 U.S.C § 203(s)(1)(A).

15. During relevant times, Defendant engaged in annual gross sales or business in excess of $500,000.00.

16. Defendant is Plaintiff Gorkov's "employer" as the term is defined by the FLSA, 29 U.S.C § 203(d), and the IWPCA, 820 ILCS § 115/2.

## UNPAID WAGES

17. Beginning in March 1999, and at all times relevant thereafter, Gorkov began and maintained his employment with Autohaus.

18. On or about May 1, 2000, Gorkov became a service technician for Autohaus.

19. At all times relevant, Autohaus contracted and agreed to compensate its service technicians, including Gorkov, on a "piece-rate basis".  A piece-rate basis differs from an hourly wage method in that service technicians are paid primarily based on each repair task completed.

20. Under Autohaus' piece-rate system, service technicians, including Gorkov, were

paid a flat-rate ranging from $17.00 to $32.00, depending on the technician's experience, for each "flag hour" a technician accrues. At all times relevant, Autohaus' piece-rate compensation system was based upon the Mercedes-Benz flag hour compensation system.

21. Flag hours are assigned by Mercedes-Benz to every task that a technician performed on a Mercedes-Benz automobile and are intended to correspond to the actual amount of time a technician would need to perform a task.

22. An Autohaus technician who completed a repair task accrued the number of flag hours that Mercedes-Benz assigned to that task, regardless of how long the technician actually took to complete it.

23. Autohaus calculates its technicians' pay for an 80-hour pay period by multiplying flag hours accrued during that pay period by the technician's applicable flat rate. (*E.g.*, a technician with a flat rate of $25.00 per hour who accrued 100 flag hours in a pay period would earn 100 x $25.00 or $2,500.00 for that pay period).

24. Beginning in or about December 2011, and at all times relevant thereafter, Autohaus began deducting amounts from Gorkov's accrued flag hours every pay period.

25. In or about December 2011, Gorkov noticed the deductions in his paycheck and that his wages did not reflect his flat rate multiplied by his flag hours accrued.

26. In or about January 2012, Gorkov inquired to Autohaus management regarding the deductions to his wages.

27. In or about January 2012, Autohaus management admitted that deductions to Gorkov's wages in fact had been made, and informed Gorkov that such deductions to his accrued flag hours were the result of so-called "clean-up" and/or "valet" services and that these deductions were justified under Illinois law and under his employment contract with Autohaus

and intended that Gorkov rely on this information.

28. At all times relevant and until recently, Gorkov relied on the information from Autohaus management.

29. At all times relevant, Gorkov has demanded that Autohaus pay him his full wages covering the hours he worked during previous pay periods.

30. At all times relevant, Gorkov never consented or authorized Autohaus to deduct from his accrued flag hours charges for "clean-up" and/or "valet" services.

## COUNT I
### Failure to Pay Wages in Violation of the Fair Labor Standards Act; FLSA COLLECTIVE ACTION ALLEGATIONS

31. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 30 as Paragraph 31 of this Count I.

32. Plaintiff brings Count I of this Complaint as a collective action under the FLSA, 29 U.S.C. § 216(b), and seeks to represent the following described similarly situated persons:

> All persons who worked for Defendants as service technicians, however titled, who were compensated, in part or in full, on a piece-rate basis in at any time between May 15, 2014 and the present who did not receive the full amount of wages earned (the "FLSA Class").

33. Plaintiff and the proposed FLSA class have been equally affected by Defendants violations of the FLSA, which amount to a single decision, policy or plan to avoid paying all earned regular and overtime wages. Thus there are questions of law and fact common to Plaintiff and the FLSA Class.

34. Plaintiff is similarly situated to the employees in the FLSA Class.

35. Plaintiff's claims or defenses are typical of the claims or defenses of the FLSA Class.

36. Plaintiff has retained counsel experienced in complex employment litigation, and Plaintiff and his counsel will fairly and adequately protect the interests of the FLSA Class.

37. A collective action is the most appropriate method for a fair and efficient resolution of the matters alleged in Count I.

38. Under the FLSA, 29 U.S.C. §§ 206, 207, Defendants were and are required to pay Plaintiff and the FLSA Class an applicable wage for all hours worked in any given workweek.

39. Defendants' books and records are material to Plaintiff's case as they disclose some of the hours worked by members of the FLSA Class and the amounts they were paid for that work.

40. Under the FLSA, 29 U.S.C. § 211(c), Defendants were required to maintain accurate records of hours worked by Plaintiff and the FLSA Class.

41. At all times relevant herein, Defendants failed to maintain accurate records of the hours worked by Plaintiff and the FLSA Class.

42. Defendants failed to pay Plaintiff and the FLSA Class all required wages for all time they worked in violation of the FLSA, 29 U.S.C. §§ 206, 207.

43. Defendant's violation of the FLSA was willful.

44. Plaintiff and the members of the FLSA class described in paragraph 32 have been damaged by not being paid the full amount of wages due to them for all time worked, in an amount not presently ascertainable, for the relevant time period.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, demands judgment against Defendants and in favor of Plaintiff and all others similarly situated in a sum that will properly, adequately and completely compensate them for the nature, extent and duration of their damages, the costs of this action, and as follows:

a. Declare and find that the Defendants committed one or more of the following acts:

   i. Violated provisions of the FLSA for Plaintiff and all persons who opt-in as party plaintiffs; and

   ii. Willfully violated provisions of the FLSA for Plaintiff and all persons who opt-in as party plaintiffs.

b. Award compensatory damages in an amount according to proof;

c. Award liquidated damages on all wages due to Plaintiff and all persons who opt-in as party plaintiffs;

d. Award all costs and reasonable attorneys' fees incurred prosecuting this claim;

e. Grant leave to amend to add claims under applicable state and federal laws to conform with the proofs at trial;

f. Grant leave to add additional plaintiffs by motion or any other method approved by the Court to conform with the proofs at trial; and

g. Grant such further relief as the Court deems just and equitable.

## COUNT II
**Failure to Pay Wages In Violation of the Illinois Wage Payment and Collection Act; IWPCA CLASS ACTION ALLEGATIONS**

45. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 30 as Paragraph 45 of this Count II.

46. Plaintiff, individually and on behalf of all others similarly situated, seeks to recover from Defendants unpaid wages, statutory penalties, attorneys' fees, and costs pursuant to Section 14(a) of the Illinois Wage Payment and Collection Act, 820 ILCS § 115/14(a).

47. As set forth *supra,* Defendants agreed and assented to pay Plaintiff and the members of the putative IWPCA Class at an agreed-upon hourly rate for all work Defendants permitted or required in a workweek.

48. Plaintiff seeks certification of the following class of similarly situated persons pursuant to Count II, brought under the IWPCA:

> All persons who worked for Defendants as service technicians, however titled, who were compensated, in part or in full, on a piece-rate basis in Illinois at any time between May 15, 2007 and the present who did not receive the full amount of wages earned and owed to them (the "IWPCA Class").

49. Plaintiff and the proposed IWPCA Class have been equally affected by Defendants' violations of the IWPCA. Thus, there are questions of law of fact common to Plaintiff and the IWPCA Class.

50. These common questions of law and fact predominate over the variations, if any, that may exist between the members of the IWPCA Class.

51. Plaintiff shares a common interest in the subject matter and remedy sought for the IWPCA Class.

52. Plaintiff believes that the number of employees who fall within the IWPCA Class exceeds 100. Therefore, the number of persons in the IWPCA Class is so numerous that joinder of all the members is impracticable.

53. Plaintiff's claims or defenses are typical of the claims or defenses of the IMWL Class.

54. Plaintiff is able to fairly and adequately represent and protect the interests of the IWPCA Class.

55. Plaintiff has retained counsel experienced in complex employment litigation, including large wage and hour actions. His counsel will fairly and adequately protect the interests of the IWPCA Class.

56. If individual actions were required to be brought by each member of the IWPCA Class injured or affected, the result would be a multiplicity of actions, creating a hardship to the IWPCA Class, to the Court, and to Defendants. Thus, a class action is the most appropriate method for the fair and efficient resolution of the matters alleged in Count II.

57. Defendants agreed to pay Plaintiff and the IWPCA Class on a time basis of computation for work performed based on the following formula: hourly rates times hours worked.

58. When Defendants hired Plaintiff and the members of the IWPCA Class, Defendants advised them of the specific hourly rates they would be paid for all work performed by them.

59. The IWPCA, 820 ILCS § 115/1 *et seq.*, defines wages as "any compensation owed to an employee by an employer pursuant to an employment contract or agreement between the two parties, whether the amount is determined on a time, task, piece, or any other basis of calculations".

60. At all times relevant, Defendants had been an "employer" as that term is defined by Section 2 of the IWPCA, 820 ILCS § 115/2.

61. At all relevant times, Plaintiff and the other members of the putative IWPCA Class have been "employees" of Defendants, as that term is defined by Section 2 of the IWPCA, 820 ILCS § 115/2.

62. The IWPCA requires employers to pay employees all wages earned by an employee during a semi-monthly or bi-weekly pay period no later than 13 days after the end of the pay period in which such wages were earned. 820 ILCS § 115/4. The IWPCA provides that "every employer shall pay the final compensation of separated employees in full, at the time of

separation, if possible, but in no case later than the next regularly scheduled payday for such employee." 820 ILCS § 115/5.

63. Defendants violated the IWPCA by regularly and repeatedly failing to properly compensate Plaintiff and the members of the putative IWPCA Class for the actual time they worked each week by failing to pay all wages earned within 13 days of the date the putative IWPCA Class earned wages by the next scheduled payday after their separation.

64. Defendants failed to pay Plaintiff and the members of the putative IWPCA Class the full amount due for all time worked on their regularly scheduled paydays, including but not limited to their final compensation, in violation of the IWPCA, 820 ILCS § 115/4.

65. Defendants failed to pay Plaintiff and the putative IWPCA Class the full amount they agreed to pay for all hours worked as result of the improper practices described herein.

66. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and the members of the putative IWPCA Class have suffered and will continue to suffer lost wages and other damages.

67. Plaintiff and the other members of the putative IWPCA Class have been damaged by not being paid the full amount of wages due to them for all time worked, in an amount not presently ascertainable, for the relevant time period.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, demands judgment against Defendants and in favor of Plaintiff and all others similarly situated in a sum that will properly, adequately and completely compensate them for the nature, extent and duration of their damages, the costs of this action, and as follows:

 a. Declare and find that the Defendants violated provisions of the IWPCA for Plaintiff and the other members of the putative IWPCA Class;

 b. Certify the IWPCA Class defined in paragraph 48 pursuant to Fed. R. Civ. p. 23;

c. Award Plaintiff and all other similarly situated persons all actual damages;

   d. Award 2% of the amount of underpayments for each month following the date of payment during which such underpayments remains unpaid pursuant to 820 ILCS § 115/14;

   e. Award all costs and reasonable attorneys' fees incurred prosecuting this claim; and

   f. Grant such further relief as this Court deems equitable and just.

## COUNT III
### (Against Defendant Autohaus)
### BREACH OF CONTRACT

68. Gorkov realleges and incorporates by reference the allegations of paragraphs 1 through 30 as paragraph 68 of this Count III.

69. In or about December 2004, Gorkov and Defendants agreed to and were bound by the payment agreement [hereinafter "The Agreement"].

70. The Agreement provides in pertinent part:

> "[Autohaus] normally distributes paychecks to most employees every other Friday for employees, covering the hours worked during the previous pay period…"

71. At all times relevant, Defendants breached their duties under The Agreement when they failed to distribute paychecks to Gorkov covering the hours he worked during the previous pay period.

72. Autohaus has refused to pay Gorkov his full wages covering the hours he worked during previous pay periods.

73. As a direct-and-proximate result of each of the foregoing wrongful acts and omissions, Gorkov has been damaged.

WHEREFORE, Gorkov prays for judgment in his favor and against the Defendants in an amount to compensate him for his damages and costs and award him such further relief that this Court deems equitable and just.

## COUNT IV
### (Against Defendant Rosengarden)
## STATUTORY LIABILITY: 820 ILCS 115/14

74. Gorkov incorporates by reference the allegations of paragraphs 1 through 30 as paragraph 74 of this Count IV.

75. Michael Rosengarden knowingly permitted Autohaus to refuse to pay Gorkov the full amount of his earned wages for flag hours completed.

76. Pursuant to 820 ILCS 115/13, "any officers of a corporation or agents of an employer who knowingly permits such employer to violate the provisions of this Act shall be deemed to be the employers of the employees of the corporation."

77. At all times relevant Rosengarden intentionally, willfully, or with reckless disregard of the consequences violated the Illinois Wage Payment and Collection Act (820 ILCS 115/9) by each of the following wrongful acts and omissions:

   a. he allowed and permitted Autohaus to deduct wages from Gorkov that were not required by law;

   b. he allowed and permitted Autohaus to deduct wages from Gorkov for services which were not a true benefit to him;

   c. he allowed and permitted Autohaus to deducted wages from Gorkov without a valid wage assignment or wage deduction;

   d. he allowed and permitted Autohaus to deduct wages from Gorkov without his express written consent;

   e. he chose to allow and permit Autohaus to fail on multiple occasions to pay Gorkov all of this wages that he earned upon accrual of flag-hours;

    f.   he chose to allow and permit Autohaus to misrepresent to Gorkov that he was not entitled to be paid all of his wages that earned with his accrual of flag-hours; and

    g.   he chose to allow and permit Autohaus not to pay Gorkov all of his wages that he earned with his flag-hours after he raised the issue of improper reductions of his wages and by which he knew or should have known or reasonably investigated Gorkov's inquiry about the improper deductions.

78. As a direct-and-proximate result of each of the foregoing wrongful acts and omissions, Gorkov has been damaged.

WHEREFORE, Gorkov prays for judgment in his favor and against the Defendants in an amount to compensate him for his damages and costs and award him such further relief that this Court deems equitable and just.

## COUNT V
### (Against Defendants Rosengarden and Tames)
### Intentional Misconduct

79. Gorkov incorporates by reference the allegations of paragraphs 1 through 30 as paragraph 79 of this Count V.

80. At all times relevant, Michael Rosengarden was the owner of Autohaus and oversaw the General Manager of Autohaus and management staff operations.

81. At all times relevant, Michael Rosengarden, as owner of Autohaus, had a duty to understand and communicate accurate information to his management staff regarding Autohaus employment and how wages were to be paid to Autohaus employees.

82. At all times relevant, Mark Tames was the General Manager of Autohaus and his duties as General Manager included understanding and communicating accurate information to his employees about their employment with Autohaus and the wages paid to them by Autohaus.

83. In or about January 2012, Gorkov inquired to Mark Tames regarding the deductions to his wages.

84. At all times relevant, Gorkov relied on Mark Tames' explanation about deductions from his earned wages.

85. At all times relevant, Michael Rosengarden and Mark Tames owed Gorkov a duty of reasonable care.

86. At all times relevant, Michael Rosengarden and Mark Tames owed Gorkov a fiduciary duty of care.

87. At all times relevant, Michael Rosengarden and Mark Tames intentionally, willfully, or with reckless disregard of the consequences breached their duty with each of the following wrongful acts and omissions:

   a. they informed Gorkov that deductions to his accrued flag hours were the result of charges for "clean-up" and/or "valet" services and that these deductions were justified under Illinois law and under his employment contract with Autohaus and intended that Gorkov rely on this information;

   b. they allowed and permitted Autohaus to deduct wages from Gorkov that were not required by law;

   c. they allowed and permitted Autohaus to deduct wages from Gorkov for services which were not a true benefit to him;

   d. they allowed and permitted Autohaus to deduct wages from Gorkov without a valid wage assignment or wage deduction;

   e. they allowed and permitted Autohaus to deduct wages from Gorkov without his express written consent;

   f. they chose to allow and permit Autohaus to fail on multiple occasions to pay Gorkov all of this wages that he earned upon accrual of flag-hours;

   g. they chose to allow and permit Autohaus to misrepresent to Gorkov that he was not entitled to be paid all of his wages that earned with his accrual of flag-hours; and

   h. they chose to allow and permit Autohaus not to pay Gorkov all of his wages that he earned with his flag-hours after he raised the issue of improper reductions of his wages and by which, they knew or should have known reasonably investigated his inquiry about the improper deductions.

88. As a direct-and-proximate result of the foregoing wrongful acts and omissions, Gorkov has been damaged.

WHEREFORE, Gorkov prays that this Court enter judgment in his favor and against Defendants, Michael Rosengarden and Mark Tames and award him such further relief that this Court deems equitable and just.

IGOR GORKOV

By:   /s/ Kasif Khowaja
      His Attorney

| | |
|---|---|
| Kasif Khowaja | James X. Bormes |
| The Khowaja Law Firm, LLC | Catherine P. Sons |
| 70 East Lake Street, Suite 1220 | Law Office of James X. Bormes, P.C. |
| Chicago, Illinois 60601 | 8 South Michigan Avenue, Suite 2600 |
| 312-356-3200 -T | Chicago, IL 60603 |
| 312-386-5800 -F | (312) 201-0575 -T |
| kasif@khowajalaw.com | (312) 332-0600 -F |
| | jxbormes@bormeslaw.com |
| | cpsons@bormeslaw.com |